FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 11, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOANN WAITE,<br><br>          Plaintiff,<br><br>     v.<br><br>GONZAGA UNIVERSITY, a nonprofit corporation,<br><br>          Defendants. | NO. 2:17-cv-00416-SAB<br><br>**ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court is Defendant's Motion for Summary Judgment on All Claims, ECF No. 28. Oral argument on the motion was held on January 30, 2019. Heather Barden was present for Plaintiff, and Michael Bradley Love was present for Defendant.

Plaintiff filed this lawsuit against her former employer claiming that Gonzaga University ("Gonzaga") discriminated against her on the basis of age, sex and/or gender, and disability, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 (ADA); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 (Title VII); the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Rehabilitation Act); the Age Discrimination in Employment Act, 29 U.S.C. § 621 (ADEA), and the Washington Law Against Discrimination, RCW 49.60 (WLAD). She also pleads retaliation, under those statutes as well as the Washington Industrial

**ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 1**

Insurance Act, RCW 54.24 *et seq* (WIIA). In addition, Plaintiff asserts a claim for negligent infliction of emotional distress.

Defendant disputes Plaintiff's claims, primarily arguing that she has not established a prima facie case because (a) Plaintiff has not pled any adverse employment actions, and (b) Defendant established legitimate, non-discriminatory reasons for any adverse employment actions they took. For the reasons stated herein, Defendant's motion is granted in part and denied in part.

**Facts**

Plaintiff, Joann Waite, is a 55-year-old woman who was employed at Gonzaga for 10 years. She led a department that specializes in securing grants for research proposals, the department of Sponsored Research and Programs (SRP.) That small department was located in the Crosby house and consisted of Plaintiff and a handful of other employees. Plaintiff would bring her bulldog Maddie into work. Maddie was an "informal Gonzaga mascot," and according to Plaintiff, posed no problems.

On October 31, 2013, Plaintiff suffered a fall at work which led to wrist, shoulder, and knee injuries. In December 2013, Plaintiff provided a doctor's note supporting a need for accommodation for injuries resulting from the fall in the form of an ergonomic workstation with multiple components (*i.e.* a sit-stand desk, an ergonomic mouse and keyboard, and a floor mat). The accommodation was not completely provided until March of 2014. Gonzaga allowed for an alternative accommodation of 6-hour workdays until the workstation was completed.

In April of 2014, Ms. Waite was instructed by the Vice President of Marketing and Communications that she could not bring Maddie to Gonzaga sporting events, due to concerns about licensing and trademark concerns and NCAA regulations about live mascots.

In December of 2014, Ms. Waite provided a doctor's note indicating that Maddie was trained as a service dog, able to alert Plaintiff of hyper- or

**ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 2**

hypoglycemia. Gonzaga allowed Ms. Waite to continue to bring Maddie to work, without requiring any proof of vaccination or county licensing at that time.

In May of 2016, Angela Swan sought confirmation that Plaintiff still required the ergonomic workstation. Gonzaga alleges that this was due to a somewhat newly implemented policy of attempting to recoup and repurpose accommodations that were no longer medically necessary as a cost-cutting measure. *See* ECF No. 40-23, Wood-Gaines Dep. at 31:14-32:20. There was a prolonged e-mail chain that began when Ms. Swan sent an e-mail requesting verification of a continued need for the accommodation on May 11, 2016. *See* ECF No. 40-10. ("If you do still need them, I need updated medical documentation that indicates that, as everything I currently have shows your need has expired. I've included a document you can provided to your doctor that they can complete and send to me so we can formalize your need for the accommodation.")

That e-mail also included a follow-up regarding Maddie, the bulldog. *Id.* ("We should also take steps to formalize your service animal as an accommodation at this time. I already have the medical documentation I need for this but I do need vaccination records and verification of the animal's license/registration.")

Over the next six months Plaintiff either did not respond to Ms. Swan or provided e-mails from her doctor confirming the continued need, though not via the requested form, and without a diagnosis or a medical opinion linking the accommodation to a specific condition.

Shortly after the beginning of the Swan-Waite correspondence, Jeff Cronk, a Gonzaga employee in a separate department, sent out an e-mail to many faculty members soliciting feedback on SRP generally and specifically Plaintiff. *See* ECF 40-11. That e-mail was sent on July 28, 2016. The e-mail made clear it was fishing for negative responses. *Id.*

Roughly a week after the Cronk e-mail, on August 6th, 2016, Plaintiff sent an e-mail to her supervisor which contained a reference to her concerns about "the

**ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 3**

rash of women over 40 who have left Gonzaga (on their own or dismissed.)" ECF No. 40-21, King Dep., 107:17-25. Plaintiff alleges, and Defendant disputes, that she had expressed these concerns with her supervisor previously in conversations over the years.

On September 12, 2016, Ms. Ruff informed her supervisor that she intended to file a confidential whistleblower complaint against Plaintiff, and did so on September 15, 2016. *See* ECF No. 31, Ruff Decl., ¶ 12. The crux of that complaint was that Plaintiff was improperly using Gonzaga resources and time to further her private business, aOneandOnly Pet Supplies (aOaO), which sold a line of products for pets based on natural ingredients. There were other allegations regarding Plaintiff's dogs in the workplace and Plaintiff and her family misusing reserved parking.

Plaintiff was placed on paid administrative leave during the course of that investigation, beginning on September 26, 2016. On September 28, 2016, while Plaintiff was on leave, her ergonomic workstation was taken away and replaced with a desk which was ill-fitting and not adjustable. The leave was originally scheduled to end on November 15, 2016. On November 10, 2016, Plaintiff filed a counter-complaint alleging age and sex discrimination. Gonzaga extended her paid leave during the pendency of that investigation. Plaintiff filed an EEOC complaint on December 12, 2016.

Plaintiff was notified of the results of both investigations on December 16, 2016. In addition to the allegations made by Ms. Ruff, Gonzaga was concerned about Plaintiff's continued use of Maddie as an unofficial mascot, despite the July 2014 e-mail instructing her to cease such action. Plaintiff was given a letter of expectation, and returned to work on December 19, 2016 at the same position, duties, and compensation. The two changes were her ergonomic workstation being replaced, and a change in her direct supervisor, which was switched from Dr. Ron Large, an Associate Academic President, to Paul Bracke, Dean of Library.

**ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 4**

In February of 2017, Plaintiff had a conversation with Ms. Swan regarding her dissatisfaction with her new desk. On February 6, 2017, Plaintiff provided Ms. Swan with the form that Ms. Swan asked Plaintiff to have her doctor fill out in May of 2016. Plaintiff's ergonomic workstation was returned on February 14, 2017. On February 15, 2017, Plaintiff suffered another slip and fall while walking to her office from her car. She lodged an L&I complaint, which Gonzaga initially contested, raising the argument that Plaintiff was not engaged in work when the injury occurred and was instead commuting, despite it taking place on Gonzaga's property in front of the Cosby House.

The Department of Labor and Industries found that Plaintiff's claim was covered. In July of 2017, Ms. Swan reported to the DLI, through Gonzaga's claims administrator, that Plaintiff may have been failing to report income from aOaO. L&I did not substantiate that allegation. Plaintiff alleges, and Defendant denies, that Defendant informed Plaintiff that she would be expected to perform "100% of her job description" upon returning, and refused to respond to L&I regarding a return to work with light duty. ECF No. 1, Compl. at ¶ 54-56. As she was recovering, Plaintiff was accommodated by allowing her to work initially for two-hours per day from home, and then three-hours per day at work. *See* ECF No. 40-25, Wood Dep., 22:2-12. Shortly after returning for three-hour work days. Plaintiff's psychologist determined that it was not advisable for Plaintiff to return to work and so Plaintiff quit.

## Summary Judgment Standard

Summary judgment is appropriate if the pleadings, discovery, and affidavits demonstrate there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)). There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The

moving party has the burden of showing the absence of a genuine issue of fact for trial. *Celotex*, 477 U.S. at 325.

When considering a motion for summary judgment, the Court neither weighs evidence nor assesses credibility; instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. When relevant facts are not in dispute, summary judgment as a matter of law is appropriate, *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999), but "[i]f reasonable minds can reach different conclusions, summary judgment is improper." *Kalmas v. Wagner*, 133 Wash. 2d 210, 215 (1997). In employment discrimination cases, "summary judgment in favor of the employer is seldom appropriate." *Riehl v. Foodmaker, Inc.*, 152 Wash. 2d 138, 144 (2004)(abrogated on other grounds by *Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas Cty.*, 189 Wash. 2d 516 (2017)).

## Discussion

### A. Disability Discrimination

Plaintiff alleges claims for disability discrimination under WLAD, the ADA, and the Rehabilitation Act. Each of these claims broadly requires as essential elements that (1) Plaintiff is covered by the relevant statute; (2) Plaintiff suffered an adverse employment action, which is (3) sufficiently related to Plaintiff's disability. *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001) (ADA); *Scrivener v. Clark Coll.*, 181 Wash. 2d 439, 448 (2014) (WLAD); *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000) (Rehabilitation Act.) The causal relationship in each statutory scheme varies slightly, with the ADA requiring a "motivating factor" standard, and the WLAD adopting a "substantial factor" test. *Snead*, 237 F.3d at 1087; WPI 330.01.01. And under all three schemes, a plaintiff alleging disability discrimination in the employment context is entitled to the *McDonnell Douglas* burden shifting framework.

Under the *McDonell Douglas* framework, once an employee makes out a prima facie case for discrimination or retaliation, the burden shifts to the employer to proffer a legitimate, non-discriminatory reason for the complained of conduct. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the defendant does so, the plaintiff then has the burden of pleading enough fats to infer that the non-discriminatory rationale is pretextual. *Id.*

In this case, the parties dispute whether Plaintiff has made out a prima facie case. Defendant alleges that there was no adverse employment action. Plaintiff identifies a number of adverse employment actions: (1) Delayed accommodation of an ergonomic workstation in 2013; (2) Ms. Swan's e-mails regarding re-establishing the need for that ergonomic workstation and Maddie's vaccination record and licenses, beginning in May of 2016; (3) Mr. Cronk's e-mail soliciting negative feedback regarding Plaintiff, sent on July 28, 2016; (4) the eventual removal of Plaintiff's workstation and replacement of it with a smaller, stationary desk on September 8, 2016; (5) Plaintiff being placed on administrative leave on September 26, 2016; (6) Plaintiff's delayed return to work from that leave; (7) Plaintiff's change in command upon returning to work; (8) Defendant's reporting Plaintiff's secondary source of income during her second L&I leave, and (9) Defendant's failure to follow-up regarding light-duty accommodations. Defendant alleges that none of these are adverse employment actions as a matter of law.

The Ninth Circuit has held that "not every employment decision amounts to an adverse employment action." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). Instead, this element is only met when a change "materially affects the compensation, terms, conditions or privileges . . . of employment." *Davis v. Team Elec. Co.*, F.3d 1080, 1089 (9th Cir. 2008) (quoting *Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1125 (9th Cir. 2000).

In *Chuang*, the Ninth Circuit found that the relocation of an employee's workspace constituted an adverse employment action, holding that "[t]he removal

**ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ꝉ 7**

of or substantial interference with work facilities important to the performance of the job constitutes a material change in the terms and conditions of a person's employment." 225 F.3d at 1125. Plaintiff alleges that the desk was essential to her capability to perform her job, and accordingly, the removal of the ergonomic equipment was an adverse employment action.

Further, in determining whether Plaintiff's has adequately shown an adverse employment action at the summary judgment stage the Court may examine the employer's actions in the aggregate. *See Billings v. Town of Grafton*, 515 F.3d 39, 54 n.13 (1st Cir. 2008) ("Retaliatory actions that are not materially adverse when considered individually may collectively amount to a retaliatory environment"); *Martin v. Gates*, no. 07-00513, 2008 WL 4657807, at *6 (D. Haw. Oct. 20, 2008). And to the extent that Plaintiff alleges constructive discharge or hostile workplace, it is for the jury to consider the cumulative effect of these actions. Thus, Plaintiff has made out a prima facie case.

Gonzaga provided a legitimate non-discriminatory rationale for removing the desk: supply management and cost reduction. Under *McDonell Douglas*, the inquiry thus turns on whether Plaintiff has pled sufficient facts to infer that the rationale, conserving limited resources, is pretextual.

An employee may satisfy the pretext prong of *McDonnell Douglas* by "offering sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is pretextual or (2) that although the employer's stated reason is legitimate, discrimination nevertheless was a substantial factor motivating the employer." *Scrivener*, 181 Wash. 2d at 446–47. The Court looks to the cumulative evidence presented to determine whether Plaintiff has sufficiently raised a genuine issue on pretext. *Lyons v. England*, 307 F.3d 1092, 1113 (9th Cir. 2002). Thus, the breadth of allegedly adverse employment actions is relevant in this consideration, as well.

//

**ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 8**

Plaintiff's main argument for why Defendant's rationale is pretextual relates to the alleged existence of other sit-stand desks in storage at the time of the replacement. Defendant's argument is that the different desks were paid for out of different budgets from different departments. Thus, while there may have been other sit-stand desks in storage, they were not necessarily within the HR department, which was responsible for medical accommodations.

At this stage, Plaintiff has provided enough evidence to meet her burden, by providing evidence that there was no actual inventory need to revoke the ergonomic workstation. The question of whether the decision to remove Plaintiff's desk was due to legitimate non-discriminatory inventory needs based on intra-departmental budgets or as a pretext for discrimination against Plaintiff due to her disability is one for the jury. Defendant's motion as it relates to Plaintiff's claims for disability discrimination under the ADA, WLAD and Rehabilitation Act is **denied**.

### B. Retaliation Claims

The essential elements of retaliation claims under the ADA, ADEA, Title VII, and WLAD are (1) a protected activity (2) causally connected to (3) retaliatory employer conduct. *Ruggles v. California Polytechnic State Univ.*, 797 F.2d 782, 785 (9th Cir. 1986). Plaintiff alleges that she was retaliated against for (a) raising concerns of women over 40 leaving employment at Gonzaga; (b) requesting a reasonable accommodation under the ADA and WLAD; and (c) filing an L&I claim.

As with the disability discrimination claims, employer conduct is an essential element of a retaliation claim. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). However, the scope of impermissible retaliatory conduct is broader than prohibited discriminatory conduct under Title VII, the ADA, the ADEA or the Rehabilitation Act, in that it extends beyond workplace conduct. *Id.*

The quantum of harm differs as well. *Carter-Miller v.* Washington, No. 07-1825, 2008 WL 4542372, at *9 (W.D. Wash. Oct. 8, 2008). In the retaliation context, Plaintiff must only show that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, at 68. (internal quotations omitted). However, the *Burlington* Court made clear that retaliation claims still do not set forth a "general civility code," and that "petty slights, minor annoyances, and simple lack of good manners" cannot serve as retaliatory conduct. *Id.*

### (1) Title VII, WLAD, and ADEA Claims

Plaintiff alleges that she raised concerns about the number of women over 40 who left Gonzaga with her supervisor, and shortly thereafter was placed on paid administrative leave for "trivial, unheard of reasons." ECF No. 38, at 21. Although being placed on paid administrative leave is not an adverse action for a direct discrimination claim, it is retaliatory conduct. *See Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 596 (6th Cir. 2007) (holding that the more "liberal definition" from *Burlington Northern* makes paid administrative leave retaliatory conduct but not an adverse employment action); *Acosta v. Brain*, 910 F.3d 502, 513 (9th Cir. 2018) (affirming district court's finding that placement of employee on paid administrative leave was retaliatory conduct.)

Given the proximity in time of Plaintiff's alleged report and her placement on administrative leave, the causation prong is likely met as well, and the conduct of complaining of an employer's allegedly discriminatory conduct is undeniably protected. *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 763 (9th Cir. 1996). While Defendant has offered the rationale of placing Plaintiff on leave to protect the integrity of the investigation, Defendant admits that this policy is not uniformly implemented, leaving open the inference that it was applied to Plaintiff as retaliation. Thus, summary judgment on these claims is **denied**.

**ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 10**

### (2) ADA and Rehabilitation Act

Plaintiff alleges that the e-mails from Ms. Swan, and the eventual removal of her ergonomic workstation, were retaliation for requesting the workstation itself in 2013 and reaffirming the need for it in May of 2016. Allowing a claim for the denial of an accommodation as retaliation for requesting the accommodation would convert all ADA and WLAD failure-to-accommodate claims. The District of Columbia decided a case that is almost precisely on point, holding that requiring an employee to provide updated documentation for an accommodation, and the revocation of that accommodation, is neither retaliatory conduct under the Rehabilitation Act nor sufficiently "caused" by the invocation of the Rehabilitation Act. *Gard v. U.S. Dep't of Educ.*, 752 F. Supp. 2d 30, 39 (D.D.C. 2010), aff'd, No. 11-5020, 2011 WL 2148585 (D.C. Cir. May 25, 2011). However, the revocation of a previously granted accommodation can be retaliation for other protected activity. *See Honey v. Cnty. of Rockland*, 200 F. Supp. 2d 311, 320 (S.D.N.Y. 2002) (accommodation revoked after EEOC claim filed; summary judgment for defendant denied because question of whether revocation was retaliatory was for jury.) And, the removal of the workstation is not the only alleged retaliatory conduct. Plaintiff also alleges that being placed on paid administrative leave for what she alleges were "trivial" workplace infractions was in retaliation for her requests for continuing accommodation.

As with the Title VII, ADA, WLAD and ADEA claims, this employer conduct establishes a prima facie case, given the close proximity in time between being placed on leave and the Waite-Swan e-mail exchanges, and the lack of uniformity in the practice of placing employees on leave after receiving a complaint. Thus, summary judgment on these claims is **denied.**

### (3) WIIA

Plaintiff also alleges that Defendant retaliated against her by surveilling Plaintiff's social media accounts, challenging whether Gonzaga was liable under

**ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ⸱ 11**

the WIIA, and reporting Plaintiff's potential source of secondary income to the Department of Labor and Industry. Defendant's main argument as to why these challenges are not retaliatory is that they are legally permitted to appeal the coverage determination, citing RCW 51.52.060. This argument is insufficient. Retaliatory litigation, including administrative challenges, is actionable as retaliation. *See e.g. Ward v. Wal-Mart Stores, Inc.*, 140 F. Supp. 2d 1220, 1231 (D.N.M. 2001)(retaliation when employer challenges unemployment benefits after EEOC complaint filed); *United Credit Bureau of Am., Inc. v. N.L.R.B.*, 643 F.2d 1017, 1025 (4th Cir. 1981) (employer's retaliatory litigation violates N.L.R.B.)

The question is thus not whether Defendant had a legal right to challenge the coverage and income calculation, but whether it did so with a retaliatory intent. Ms. Swan monitored Plaintiff's social media accounts, intending to find proof that Plaintiff was driving a car and thus not adhering to her doctor's limitations. *See* ECF No. 40-20, Swan Dep. at 58:19-59:9. This occurred in late 2017 and 2018, well after the protected activities had occurred, and was not typical for Ms. Swan. *Id.*, at 57:11-23. A juror could find from these facts that Ms. Swan was at least partially motivated by a retaliatory intent, and thus summary judgment on this claim is **denied.**

### C. Failure to Accommodate Claims

Plaintiff alleges that Defendant's delay in providing accommodation in 2013, revocation of that accommodation in 2016, refusal to allow Maddie the bulldog at sporting events beginning in 2014, and failure to engage in a good faith interactive process regarding a return to work in 2017 constituted violations of the ADA, Rehabilitation Act, and WLAD.

The elements of claims under these statutes are (1) an otherwise qualified employee who is capable of performing her job with reasonable accommodations; (2) who has a disability; (3) of which the employer has notice; and (4) which the employer fails to reasonably accommodate. *Samper v. Providence St. Vincent Med.*

**ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** ~ 12

*Ctr.*, 675 F.3d 1233, 1237 (9th. Cir. 2012). Plaintiff argues that each of the four acts above constituted failures to accommodate.

The delay in providing an ergonomic workstation was not a failure to accommodate, as employers are entitled to choose between accommodations, and provided an alternative accommodation of 6-hour workdays while waiting to install the equipment. *See Gamble v. City of Seattle*, __ Wash. 2d. __, 431 P.3d 1091, 1095 (Wash. Ct. App. 2018) (employee is not entitled to choose between accommodations.)

The refusal to allow Maddie into sporting events is also not a failure to accommodate. At the time, Defendant did not know that Maddie was a service animal and the context makes it clear that Maddie was disinvited to sporting events due to Gonzaga's concerns about trademark and licensing exposure, as well as NCAA regulations on live mascots.

The removal of the desk is also not a failure to accommodate. The desk was initially an accommodation for injuries sustained in the 2013 slip and fall. *See* ECF No. 40-2. Once the L&I incident was closed, Ms. Swan attempted to confirm whether the desk was still necessary. ECF No. 40-10. Plaintiff responded that "she still needed those items," and that "it was because of the physical therapy and those that [she] was able to work as [she] should." *Id.* Plaintiff informed Ms. Swan that she would "get that information from her doctor," but from the record submitted, appears not to have submitted verification from a doctor until September 26, 2016. That document does not identify any active disability, and states "Patient was scheduled to be seen today for L&I injury, but has been redirected to occupational medicine. She will need continuation of her ergonomic accommodations (desk, foot stool, etc…)." ECF No. 27-12.

Upon her return, within a few days of sitting at the new desk, Plaintiff alleges that the non-ergonomic desk re-aggravated her injuries from 2013, and caused deterioration for her diabetic neuropathy. She communicated this to Ms.

**ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 13**

Swan within the first few days of her return to work and provided a Doctor's note identifying diabetic neuropathy as the disability requiring the accommodation on January 26, 2017. ECF No. 40-14. The ergonomic desk was restored on February 14, 2017.

An employer is generally not liable for revoking previous accommodations if they believe that the disabling condition no longer exists, and the employee does not make a new claim of disability. *Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318, 331 (3d Cir. 2003) Ms. Swan's e-mail requested identification of what condition required the accommodation. Plaintiff did not identify her neuropathy as the disabling condition until her return to work, and thus failed to establish an entitlement to accommodation until then. Further, by failing to provide that information for months, Plaintiff failed to fulfil her duty "to cooperate with the employer's efforts by explaining her disability." *Goodman v. Boeing Co.*, 127 Wash. 2d 401, 408 (1995), amended (Sept. 26, 1995). Thus, the question is whether the two-and-a-half week gap spanning from Gonzaga being provided the medical condition requiring accommodation and reinstalling the desk constitutes a failure to accommodate. Such a short delay is generally not a failure to accommodate. *See e.g. Powers v. Polygram Holding, Inc.*, 40 F. Supp. 2d 195, 203 (S.D.N.Y. 1999) (granting summary judgment for employer when three-week delay from establishment of disability to provision of accommodation.)

The final allegation of failure to accommodate after the second fall is also insufficient. Defendant provided evidence of engaging in the interactive process after the second fall. *See* ECF No. 25-3, Waite Dep., 234:2-9. Thus, summary judgment on the failure to accommodate claims is **granted.**

**D. Age, Gender and Sex Discrimination**

Plaintiff's claims under the ADEA, WLAD, and Title VII for direct age and gender discrimination, as opposed to retaliation, are legally insufficient. To make out these claims, Plaintiff must show that she (1) is a member of a protected class,

**ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 14**

(2) is qualified for the position she had; (3) suffered adverse employment actions; and (4) that others who were similarly situated were treated more favorably. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 062 (9th Cir. 2002). Plaintiff has failed to establish the fourth element.

Plaintiff alleges as adverse employment actions (1) being placed on paid administrative leave; (2) having her supervisor changed; (3) the removal of her ergonomic desk; and (4) the requirement that she provide vaccination and county licensing documentation for Maddie.

Plaintiff's allegation that other employees had sit-stand desks without requiring an accommodation is insufficient to establish differential treatment. There is no allegation of any men or younger women who were allowed to continue receiving medical accommodations without establishing an active disability. Plaintiff relies upon primarily anecdotal evidence of other women who were over the age of 40 and who ceased working at Gonzaga or were demoted to support her claims. Some of those women were fired, others quit, and such anecdotes are insufficient to survive summary judgment. Summary judgment for these claims is **granted.**

### E. Negligent Infliction of Emotional Distress

Lastly, Plaintiff asserts a common law claim for the negligent infliction of emotional distress (NIED). To establish such a claim Plaintiff must show (1) duty, (2) breach; (3) causation (4) (by objective symptomology) of damages. *See Kumar v. Gate Gourmet Inc.*, 180 Wash. 2d 481, 505 (2014).

The duty of an employer to its employees does not generally extend to the disciplinary context, and liability only issues when an employer's negligent conduct's risks outweigh its utility. *Id.* An employer does not owe an employee a "stress-free workplace." *Snyder v. Med. Serv. Corp. of E. Wash.*, 145 Wash. 2d 233, 244 (2001). Plaintiff alleges that the e-mail from Jeff Cronk soliciting feedback regarding her performance ("a witch hunt"), Mr. Large's allowing Ms.

**ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 15**

Swan to "badger" Plaintiff, Mr. Large's ignoring Plaintiff's concerns about discrimination and ignoring Plaintiff's concerns about federal grant regulation compliance and updated job titling; and placing Plaintiff on paid administrative leave constitute breach.

None of these acts or omissions, individually or discretely, constitute negligence. Further, at this stage in the pleading, it is incumbent upon Plaintiff to show through objective symptomology causation from those acts to her alleged harm. Plaintiff submits a doctor's note stating that a return to work was inadvisable "due to the negative impact that the work environment has on her psychological health." ECF No. 40-25, Wood Dep 23:17-24. Yet the physician who wrote that note makes clear in her deposition that the increase in stress and related symptoms was due to her transition from working for two hours per day from home to working three hours per day at the University. *Id.*, 24:1-7. Dr. Wood stated that, in summary, Plaintiff's increased anxiety and depression regarding to returning to work were due to "overall just feeling picked on." *Id.*, 9:12. These are precisely the types of normal workplace personality disputes that do not give rise to an NIED claim, and the lack of objective symptomology tethered to the allegedly tortious conduct provides another reason why summary judgment for this claim is appropriate. Thus, summary judgment for the claim for negligent infliction of emotional distress is **granted.**

### Conclusion

A genuine issue of material fact exists precluding summary judgment as to Plaintiff's direct disability discrimination claim, as well as her retaliation claims. In this respect, Defendant's motion is denied. However, because Plaintiff has presented no evidence sufficient to create an issue of fact as to her age, gender and sex discrimination, failure to accommodate, and negligent infliction of emotional distress claims, Defendants' motion as to those claims is granted.

//

**ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** ~ 16

Accordingly, **IT IS HEREBY ORDERED**:

1. Consistent with this opinion, Defendant's Motion for Summary Judgment, ECF No. 28, is **GRANTED in part, and DENIED in part**.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order and to provide copies to counsel.

**DATED** this 11th day of February 2019.



Stanley A. Bastian
United States District Judge

**ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 17**